Shaheen F. Manshoory, Esq. (State Bar No. 299426)
*Shaheen@manshoorylaw.com*
MANSHOORY LAW GROUP, APC
1200 Wilshire Blvd., Suite 409
Los Angeles, California 90017
Telephone: (213) 221-7772
Facsimile: (213) 337-8850

Attorneys for Defendant,
Gabriel Hernandez

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:19-cr-00176-CAS |
| v. | Hon. Christina A. Snyder |
| GABRIEL HERNANDEZ, | **DEFENDANT GABRIEL HERNANDEZ'S SENTENCING MEMORANDUM** |
| Defendant. | Sentencing Date: March 23, 2020 |

Mr. Gabriel Hernandez ("Hernandez") by and through his undersigned counsel, respectfully submits this sentencing memorandum and respectfully requests the Court to consider the following information in determining his sentence.

## OVERVIEW

Mr. Hernandez pled guilty to a single-count Information that charged him with distribution of Oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C). (Presentence Investigation Report ("PSR"), ¶¶ 1, 2). In the plea agreement, the parties agreed to a base offense level of 30, a two-level increase for abuse of trust, and a three-level reduction for acceptance of responsibility. (PSR ¶¶ 5, 6).

Recently, counsel for Mr. Hernandez determined that he is also eligible for an additional two-level reduction, pursuant to U.S.S.G. § 2D1.1(b)(18), which states: "If the defendant meets the criteria set forth in subdivisions (1) - (5) of subsection (a) of §5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases), decrease by 2 levels." Mr. Hernandez's counsel brought this matter to the attention of the Assistant United States Attorney, who agreed that the additional two-level reduction should apply to Mr. Hernandez. Because the additional reduction was only discovered after the plea agreement was signed, it is not reflected in the PSR. Both Mr. Hernandez and the Government agree, though, that the reduction applies.

Finally, the plea agreement expressly reserves the right for Mr. Hernandez to move for a four-level downward variance based on voluntarily surrendering his DEA registration. *See Booker v. United States*, 543 U.S. 220 (2005).

Without taking into account the reduction under § 2D1.1(b)(18), the PSR calculated a total offense level of 29, a Criminal History Category of I, and an advisory sentencing range of 87 to 108 months. Inclusion of the two-level reduction would result in a total offense level of 27 and an advisory sentencing range of 70 to 87 months. A four-level downward variance would result in a total offense level of 23, with an advisory sentencing range of 46 to 57 months. Hernandez submits that a

sentence at or below the bottom of this range would reasonable and would meet the goals of the sentencing statutes.

## SENTENCING LAW

The ultimate task facing this Court is to fashion a reasonable sentence based on the Sentencing Guidelines, the Section § 3553(a) factors, and the application of the Court's considerable discretion. *See Kimbrough v. United States*, 552 U.S. 85 (2007). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 48 (2007). While "the Guidelines should be the starting point and the initial benchmark," they "are not the only consideration." *Id*. The district court must "consider all of the [18 U.S.C.] § 3553(a) factors" and "must make an individualized assessment based on the facts presented." *Id*. at 48-49. Further, pursuant to 18 U.S.C. § 3661, the Court is free to consider any "information concerning the background, character, and conduct of a person convicted of an offense . . . for the purpose of imposing an appropriate sentence." Finally, the Supreme Court has authorized district courts to vary from the Guidelines on policy grounds. *See Kimbrough*, 552 U.S. at 106-07. *See also Spears v. United States*, 555 U.S. 261, 264 (2009) (a Guideline may be rejected on a categorical basis "and not simply based on an individualized determination that [it] yield[s] an excessive sentence in a particular case.").

## DOWNWARD VARIANCE UNDER § 3553(a)

### A.   Section 3553(a) Factors

Section 3553(a) requires sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2," which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider, among several factors, (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the sentencing range established by the Guidelines.

### B. History and Characteristics of Mr. Hernandez

Section § 3553(a)(1) requires a sentencing court to consider the history and characteristics of the defendant. There are many factors in connection with Hernandez's history and personal characteristics that support a sentence at or below the sentencing range of an offense of level 23.

#### 1. Personal History

Mr. Hernandez was born in Los Angeles in 1960, the youngest of five children. His parents are both retired and living in Hacienda Heights, California. His father is suffering from Parkinson's Disease and his mother has Alzheimer/Dementia. Hernandez has been married for almost 25 years. His wife is a librarian for the City of Santa Ana. They have two daughters, ages 20 and 16. Hernandez home schooled the youngest daughter during elementary school and she now attends Innovations High School where her learning disabilities can be addressed on a one-to-one basis. His oldest daughter is a student at a junior college.

Education was always important when Hernandez was growing up. He and his oldest sister were the first in their family to graduate from college.[1] He earned a Bachelor of Arts degree in 1987, and a Master of Arts in psychology in 1996, both

---

[1] Hernandez and his sister attended the same college, at the same time, and she graduated one day before Hernandez.

from Cal State Long Beach. In 2004, he received a physician assistant certificate from Charles Drew University in Wilmington, California. He currently lives in Anaheim with his wife, two daughters, his mother-in-law, and sister-in-law who has Down Syndrome.

### 2. Letters Supporting Mr. Hernandez

Family members and friends have submitted letters to the Court in support of Hernandez.[2] These letters describe Hernandez as a kind and gentle family man; a man of "highest integrity" and "a very loving husband;" and "an excellent example of a role model" to his children and family members. Below is a brief summary of a few of the letters:

| | |
|---|---|
| **Dr. Steve Ross** | Dr. Ross is a Chiropractor and operates Ross Health Care Clinic. He has known Hernandez for nine years and worked with him for five years. He writes that Hernandez "always treated his patient's [sic] with understanding, compassion, professionalism, and honesty" When some patients were unable to pay for services, Hernandez would provide services at no charge. |
| **Michael Murrietta** | Mr. Murrietta is Hernandez's nephew. Growing up in a single-parent home, Mr. Murrietta and his brother consider Hernandez a father figure. Hernandez always stressed the importance of education to him and his brother. "I will always hold my uncle to a higher standard than most people in this world because of the example he has set for us to be the best at what we set our minds to." |
| **Kate Hernandez** | Kate is Hernandez's oldest daughter and she writes that they have a very close-knit family that will continue to |

---

[2] The letters are attached as Exhibit A.

|   |   |   |
|---|---|---|
|   |   | support Hernandez. Hernandez was always "an excellent example of a role model" and is "an example of the type of parent I need to become in the future." |
|   | **Deborah Hernandez** | Deborah is Hernandez's older sister. She writes how Hernandez juggled his school and work schedule so that he could home-school his youngest daughter. He is very generous with family members, including extended family, allowing his mother-in-law and his disabled sister-in-law live in his home without asking for or accepting any reimbursement. |

These letters paint a picture of Hernandez that is the complete opposite of what is reflected by the offense conduct. Hernandez respectfully asks the Court to consider the contents of the letters when determining his sentence.

C. **Purposes of Sentencing – Section 3553(a)(2) Factors**

1. Just Punishment / Promoting Respect for the Law

While it is true Mr. Hernandez brought on his own downfall, it must be stressed that he has already suffered serious consequences as a result of his actions and he will suffer additional collateral consequences in the future. To determine a just punishment, collateral consequences of a conviction should take into consideration. One such collateral consequence his guilty plea is that he now has the social stigma that goes with having a federal conviction, a consequence that will remain with him for the rest of his life. Another significant collateral consequence is Hernandez's voluntary surrender of his DEA registration, which, in combination with a felony conviction, makes it highly unlikely he will be able to work as a physician's assistant in the future.

Since *Booker*, many courts have concluded that similar significant collateral consequences warrant a variance from the advisory guideline range. For instance, the Fourth Circuit upheld a thirty-six-month reduction on the basis of such factors as

devotion to family and profession, loss of teaching certificate and state pension, potential for rehabilitation, and a low chance of recidivism. *See United States v. Pauley*, 511 F.3d 468 (4th Cir. 2007). In *United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009), the Second Circuit affirmed a downward variance from 78 to 97 months, to a sentence of 20 months, in part because the "conviction made it doubtful that the defendant could pursue his career as an academic or translator, and therefore that the need for further deterrence and protection of the public is lessened because the conviction itself already visits substantial punishment on the defendant." In *United States v. Jaime*, 2017 WL 398314, at *3 (D. D.C. 2017), the D.C. Circuit approved a variance resulting in a one-year probationary sentence, based in part because of "the potentially devastating collateral consequences of a criminal conviction, including it being an impediment to future employment."[3]

---

[3] Other District Courts have varied downward after considering the collateral consequences of a conviction. *See e.g., United States v. Olis*, 2006 WL 2716048, at *13 (S.D. Tex. 2006) (court varied downward from range of 151 to 188 months, to a sentence of 72 months based on "the chastening effect of years in prison, the attendant negative publicity, the loss of his job and accounting and law licenses . . . ."); *United States v. Wachowiak*, 412 F. Supp.2d 958, 963-64 (E.D. Wis. 2006) (imposing below-guidelines range where defendant's "future career as a teacher was ruined" and "the guidelines failed to account for the significant collateral consequences defendant suffered as a result of his conviction"); *United States v. Samaras*, 390 F. Supp.2d 805 (E.D. Wis. 2005) (below guideline sentence, in part, because "as a consequence of his conviction and sentence, defendant lost a good public sector job, a factor not supported by the guidelines"); *United States v. Ranum*, 353 F. Supp. 2d 984, 990-91 (E.D. Wis. 2005) (sentence below Guideline range in consideration of "history and character of defendant" where he lost his job at bank and "would not be able to work in banking again."); *United States v. Redemann*, 295 F. Supp. 2d 887, 895-97 (E.D. Wis. 2003) (downward departures based on collateral consequences were proper because, "[i]f the circumstances of the case reveal that the purposes of sentencing have been fully or partially fulfilled prior to the imposition of sentence, a sentence within the range set forth by the guidelines may be 'greater than necessary' to satisfy those purposes").

Mr. Hernandez recognizes that he committed a serious offense. However, the sentence imposed should be one that promotes respect for the law and provides just punishment. "Respect for the law is promoted by punishments that are fair, however, not those that simply punish for punishment's sake." *United States v. Stern*, 590 F. Supp.2d 945, 956-57 (N.D. Ohio 2008). "[A] sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Id*. (quoting *Gall*, 552 U.S. at 54).

In his plea agreement, Hernandez reserved the right to move for a four-level downward variance based on the voluntary surrender of his DEA registration. In light of the significant collateral consequences Hernandez has already suffered, and those consequences he will suffer in the future, a four-level downward variance would result in a sentence that is both just and promotes respect for the law.

### 2. Afford Adequate Deterrence to Criminal Conduct

There is no justification for Mr. Hernandez's involvement in the present offense, but the mere fact of his prosecution and conviction will deter others from engaging in similar conduct. Another deterrence consideration is that fact that prison time is more significant to a first-time offender, a fact that makes a lesser sentence just as effective as a greater sentence. For example, *United States v. Cull*, 446 F. Supp. 2d 961 (E.D. Wis. 2006), involved a marijuana conspiracy with a total of 10 kilograms of marijuana. While the defendant had prior criminal history and drug and alcohol addiction, he had never before been confined. His advisory sentencing range, which did not include a gun or role-in-the-offense enhancement, was 10 to 14 months. The court ultimately sentenced him to a non-guideline split sentence of two months in jail and four months home confinement. The court found that this sentence was "sufficient to impress on him the seriousness of his crime and deter him from re-offending," as the defendant had never been confined before. *Id*.

at 965. *See also United States v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) ("Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend.").

Mr. Hernandez's situation is similar to these cases. He has a Criminal History Score of Zero (resulting in a criminal history category of I) and has never been confined or imprisoned. Because he is a first-time offender, a sentence at or below the lowest level of the sentencing range would have a much more significant impact, and therefore offer a greater deterrence, on Hernandez.

### 3. To Protect the Public from Further Crimes / Recidivism

Regarding the potential for recidivism, the Sentencing Commission's own studies show that Hernandez's history and characteristics make him a low risk for recidivism. This is particularly true for a defendant who, like Hernandez, has zero criminal history points. With zero criminal points, Hernandez poses the lowest possible risk of recidivism, and presents the lowest possible need to protect the public. *See* United States Sentencing Commission, *A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score*, at 5 (2005)[4] ("scoring at the minimum value of zero on the CHC indicates a very *low* recidivism risk.") (emphasis in original). Without a single criminal history point, Hernandez presents only a little more than 10% risk of recidivism the first 24 months after release. By contrast, other offenders in the same criminal history category with one criminal history point have a recidivism rate twice that of Hernandez's potential rate. *See* United States Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal*

---

[4] Available at: https://www.ussc.gov/research/research-publications/comparison-federal-sentencing-guidelines-criminal-history-category-and-us-parole-commission-salient

*Sentencing Guidelines*, at 7 (2004).[5]  A sentence which assumes a rough equivalence between Hernandez's risk of recidivism and that of offenders with one criminal history point, does not adequately account for Hernandez's extremely low risk of recidivism.  The same report shows that Hernandez, as a married, non-drug using, college graduate, falls in the lowest categories for recidivism.  *Id*. at 29.[6]

      The Sentencing Commission's empirical research also shows that Hernandez, as a first-time offender, is an extremely low risk for recidivism.  Recidivism data analyzed by the Commission indicate that "first offenders" generally pose the lowest risk of recidivism.  *See, e.g., U.S. Sentencing Comm'n, "Recidivism Among Federal Offenders: A Comprehensive Overview*," at 18 (2016).[7]  Recognizing this lower risk, the Commission, on Aug 25, 2017, issued proposed amendments to the Guidelines, setting out a new Chapter Four guideline, at §4C1.1, that would provide lower guideline ranges for "first offenders" by reducing the calculated range by either one or two points.  Although the amendments are only proposed, Hernandez maintains that he does not pose a significant threat of re-offending or otherwise endangering the public; thus he is deserving of a non-guideline sentence as a first-time offender.

      4.    <u>To Provide Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner</u>

      Hernandez has a college education, a post-graduate master's degree, and has completed two additional years of training to earn a physician assistant certificate. From a practical standpoint, Hernandez is not in need of any educational or

---

[5] Available at: https://www.ussc.gov/research/research-publications/measuring-recidivism-criminal-history-computation-federal-sentencing-guidelines.  The relevant page is attached as Exhibit B.

[6] A copy of the relevant page is also attached as Exhibit B.

[7] Available at: http://www.ussc.gov/research/research-publications/recidivism-among-federal-offenders-comprehensive-overview.

vocational training offered by the Bureau of Prisons. His health condition is another matter. As set out in the PSR (¶¶ 63, 64), takes medication for high blood pressure and high cholesterol. Dr. Nancy Magness, Hernandez's treating physician, has written a letter to the Court explaining his health condition.[8] He had a heart attack in 2011 and a stent was placed in his left anterior descending artery. In 2014, an echocardiogram showed a "a moderate to severe decreased systolic function" indicating that his heart was ejecting blood at 30 to 35% level, where normal is 55% and a level below 40% can lead to heart failure. Despite taking his prescribed medication to prevent blood clots and following his treatment plan, Hernandez suffered an ischemic stroke in 2018, and had another ischemic stroke last month.

Another health-related consideration when determining a sentence is how Hernandez's health condition may impact his potential placement in a Residential Re-Entry Center ("RRC"), also known as halfway house. Placement in RRCs provide "a safe, structured, supervised environment, as well as employment counseling, job placement, financial management assistance, and other programs and services." BOP Website, "Completing the Transition."[9] However, prior to being transferred to an RRC, a medical clearance is required and inmates with serious conditions, such as Hernandez, are frequently viewed as a medical liability. RRCs, which are privately contracted facilities, are not required to accept inmates suffering with medical conditions such as Hernandez. Consequently, unlike a healthy inmate, Hernandez may not receive the benefit of an early transfer to an RRC.

While incarceration is recommended by the PSR, the cost of incarceration is another factor that the Court may consider when determining a sentence. *See e.g., United States v. McFarlin*, 535 F.3d 808, 810-11 (8th Cir. 2008) (defendant

---

[8] A copy of the letter is attached as Exhibit C.

[9] https://www.bop.gov/about/facilities/residential_reentry_management_centers.jsp

convicted of conspiracy to distribute crack cocaine, with guideline range of 97 to 121 months, sentenced to home detention and probation for three years; court noted home detention is "equally efficient and less costly than incarceration" and that § 3553(a)(2)(D) allows courts to "consider the need for medical care when determining a sentence."); *United States v. Angelos*, 345 F. Supp. 2d 1227 (D. Utah 2004) (cost of mandatory 61-year-sentence runs to $1,265,000, money that could otherwise be spent on other law enforcement or social programs to reduce crime); *United States v. Hughes*, 825 F. Supp. 866 (D. Minn. 1993) (court noting that "the non-rehabilitation purposes of incarceration-retribution, deterrence and incapacitation would all be more than adequately served by a far shorter sentence. Both society and the defendant will pay a dear cost for this sentence and receive very little in return.").

    A shorter sentence would adequately address Hernandez's needs, as well as save the American taxpayers $3,025 per month (PSR ¶ 94), and the savings could "otherwise be spent on other law enforcement or social programs to reduce crime."

### D. Conclusion – Section 3553(a) Factors

    Mr. Hernandez asks the Court to take into consideration all of the information set out in this Memorandum in evaluating the sentencing factors under §3553. Under the mandatory guidelines, a sentencing court was ordinarily required to find the existence of "extraordinary circumstances" before imposing a sentence outside of the then-mandatory guidelines range. Such a finding is no longer required as the Supreme Court held that a district court does not need to find "extraordinary" or "exceptional" circumstances to justify a non-Guidelines sentence. *See Gall v. United States*, 552 U.S. 38, 47 (2007). *See also United States v. Simmons*, 568 F.3d 564, 568 (5th Cir. 2009) (the requirement of "extraordinary circumstances" is no longer the law).

    Starting with an offense level of 27 and granting a four-level downward variance, results in a sentencing range of 46 to 57 months. A sentence at or below

the lowest level of that recommended sentencing range would be reasonable and, most important, would be sufficient, but not greater than necessary to meet the goals of sentencing.

### E. Totality of the Circumstances

A lower sentence for Mr. Hernandez is also supported by the combination of factors presented herein. In *United States v. Jones*, 158 F.3d 492, 504-05 (10th Cir. 1998), the district court departed from a sentencing range of 12 to 18 months, to a sentence of six months home confinement and three years probation. The departure was based on the totality of circumstances, including "collateral employment consequences, aberrant nature of the offense conduct, community service, support in the community, voluntary disclosure of offense conduct, post-offense rehabilitation, and access to rehabilitative counseling." *Id*. at 504. *See also United States v. Broderson*, 67 F.3d 452, 458 (2d Cir. 1995) (downward departure allowed where factors which individually would not warrant a departure were combined, and court concluded that this "confluence of circumstances" had not been taken into account by the Guidelines). *See also United States v. Coleman*, 188 F.3d 354, 362 (6th Cir. 1999) (recognizing the Guidelines explicitly acknowledge a lower sentence may be based on a combination or aggregation of factors under U.S.S.G. § 5K2.0).

The combination of factors presented in this Memorandum are appropriate for a sentence at or below the bottom of the sentencing range of 46 months, based on the totality of the circumstances.

### CONCLUSION

Mr. Hernandez respectfully requests the Court to take into consideration the information provided herein when fashioning a sentence that meets the goals of sentencing under § 3553(a). He further submits that he be granted a two-level reduction pursuant to U.S.S.G. § 2D1.1(b)(18) as agreed by the parties, a four-level downward variance under *Booker* based on, among other things, his immediate and voluntary surrender of his DEA registration upon arrest, and any further downward

variance the Court determines to be reasonable to be sufficient based on his deteriorating health and to otherwise to satisfy the purposes of Section 3553(a).

                                            Respectfully submitted,

Dated: February 28, 2020          MANSHOORY LAW GROUP

                                            /s/ Shaheen F. Manshoory
                                            Shaheen F. Manshoory
                                            Attorneys for Defendant
                                            Gabriel Hernandez